**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PATRICIA McDONALD**
**for Robert W. McDonald (deceased),**

      **Plaintiff,**

**v.**                                  **Case No.  8:05-cv-2195-T-TBM**

**LINDA S. McMAHON,[1]**
**Acting Commissioner of the United**
**States Social Security Administration,**

      **Defendant.**
_____/

**O R D E R**

      The Plaintiff seeks judicial review of the denial of her husband's claim for Social

Security disability benefits.[2]  For the reasons set out herein, the decision is affirmed.

**I.**

      Mr. McDonald (hereinafter "Claimant") was forty-seven years of age at the time of

his alleged disability onset of April 1, 2001.  He had a tenth grade education and past relevant

---

      [1]Linda S. McMahon became Acting Commissioner of Social Security on January 22, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

      [2]Plaintiff also seeks review of the denial of her husband's claim for Supplemental Security Income ("SSI") payments.  (Doc. 20).  While the record reveals her husband's claim for disability benefits, see (R. 13, 18, 25-26, 28, 30, 35, 38, 48, 54, 79, 172), it does not include an application for SSI payments, but see (R. 75).  Accordingly, this decision addresses only the denial of her husband's claim for disability benefits.

work as a dishwasher, janitor, painter, and construction worker.  The Claimant applied for disability benefits in August 2001, alleging disability as of April 1, 2001, by reason of weakness, fatigue, and shortness of breath from congestive heart failure, HIV, and hepatitis C. His application was denied originally and on reconsideration.

A hearing was held January 7, 2003, with a vocational expert present.  The Claimant was not present and the hearing was closed to determine why he did not appear.  It was later ascertained that he had passed away on February 17, 2002.  His widow, Patricia Gilchrist McDonald (hereinafter "Plaintiff"), requested to be made a substitute party and asked also for a decision to be made without a hearing.  The ALJ issued an unfavorable decision on June 18, 2003, without a hearing and without taking testimony from a vocational expert.[3]

Also before the ALJ were medical records outlining the Claimant's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.  Significant to the decision was the Claimant's date last insured for disability benefits, December 31, 2001.

By his decision of June 18, 2003, the ALJ determined that while the Claimant had severe impairments related to chronic heart failure, chronic renal failure, hypertension, hepatitis B and C, and HIV, he nonetheless had the residual functional capacity to perform a wide range of light exertional work.  Upon this finding and application of the Medical-Vocational Guidelines, the ALJ concluded that the Claimant could perform jobs available to him in the local and national economy.  Upon this conclusion, the Claimant was determined to

---

[3]Neither the Plaintiff nor the Claimant was represented before the Social Security Administration.  On this appeal, Plaintiff is represented by counsel.

be not disabled.  (R. 18).  The Appeals Council twice denied the Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided this claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims.  See 20 C.F.R. §§ 404.1501, et seq.  These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity.  In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled.  These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids."  Id. at Part 404, Subpart P, Appendix 2.  If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled.  Id. at § 404.1569.  If an individual's situation varies from the criteria listed in a rule,

4

the rule is not conclusive as to an individual's disability, but is advisory only.  Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).


III.

The Plaintiff raises three claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1) No substantial evidence to support the ALJ's conclusion that Claimant had the Residual Functional Capacity "RFC" to perform a wide range of light or sedentary work;

(2) The Administrative Law Judge failed to properly develop evidence of work Claimant could do and instead improperly relied on the Medical-Vocational Guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2.; and

(3) The Administrative Law Judge failed to properly consider Claimant's subjective complaints such as pain.

By her first claim, Plaintiff argues that the ALJ's residual functional capacity (hereinafter "RFC") determination and the reports of two non-examining doctors on which it was based are not supported by substantial evidence.  By her argument, the fact that Claimant was hospitalized for a total of 46 days between January 27, 2001, and the time of his death, February 17, 2002, alone would preclude the finding that Claimant had the functional capacity to work.  To further support her claim, Plaintiff also alleges that "virtually all of the medical

evidence indicates that Claimant's heart disease had progressed to a point which was severe and irreversible and ultimately resulted in his death." (Doc. 20 at 7-8).

Here, in the body of the decision, the ALJ found that Claimant retained the RFC to perform light[4] and sedentary[5] exertional work restricted by an occasional limitation for the activities of climbing, balancing, stooping, kneeling, crouching and crawling.[6] (R. 16). The ALJ indicated that the finding was supported by the RFC assessments of the two non-examining, state agency doctors who had reviewed Claimant's medical records. Id. The first RFC assessment was completed on October 30, 2001, and restricted Plaintiff to light exertional work with occasional postural limitations. (R. 145-52). The second RFC assessment was completed on December 17, 2001, shortly before Claimant's insured status expired, and restricted Claimant to sedentary exertional work with occasional postural

---

[4]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

[5]"Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Kelley v. Apfel, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

[6]In the findings section of the decision the ALJ found that Claimant had a RFC for a "wide range of light work." (R. 17).

limitations as well as the need to avoid concentrated exposure to heights.[7] (R. 153-60). Plaintiff challenges the ALJ's RFC determination and reliance on these opinions.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. Id. If a claimant can still do the kind of work he has done in the past, then the Regulations require that he be found not disabled. At this stage of the evaluation process, the burden is on the claimant to show that he can no longer perform his past relevant work. Jackson v. Bowen, 801 F.2d 1291, 1292 (11th Cir. 1986).

Upon careful consideration, I conclude that there is substantial evidence in the medical record to support the RFC assessments completed by the state agency doctors and the ALJ's essential adoption of such in fashioning Claimant's RFC during the pertinent period. Although Claimant was hospitalized for acute aortic insufficiency for five to six days in January 2001, the hospitalization predated his alleged onset date of disability and it appears from the record that the Claimant worked full-time after he was discharged. See (R. 58, 109). While the Claimant had a lengthy (30-plus days) hospitalization in April 2001, no restrictions were placed on his physical activity upon discharge and follow-up visits to the County Health Department in May, August, and October 2001 revealed normal physical examinations and only one complaint of dizziness. See (R. 131, 133, 135). No restrictions were indicated

---

[7]Plaintiff does not challenge the ALJ's failure to adopt this particular limitation.

during those visits.  Thus, while the reports of non-examining doctors standing alone
generally do not provide the substantial evidence needed to support a RFC determination, see
Lamb v. Bowen, 874 F.2d 698, 703 (11th Cir. 1988), those reports were not the sole basis for
the decision here.  Rather, a fair reading of the RFC opinions of the state agency doctors, as
well as the decision, reflects that the RFC opinions were fairly drawn from the medical record
as a whole which likewise was fairly and accurately considered by the ALJ.  I agree with
Plaintiff that the Claimant clearly was unable to work during his month long hospitalization in
April 2001, but she ignores the medical record from the date of Claimant's discharge to the
his date last insured in urging that the ALJ's RFC determination is unsupported.  Contrary to
her urging, there is no support in the record demonstrating that Plaintiff was unable to work
during that period.  Furthermore, the record is silent with regards to whether doctors believed
that Claimant's condition was likely to result in death, and as the ALJ pointed out, in the end
it is unclear how the Claimant died as there is no cause of death on Claimant's death
certificate or otherwise revealed in the records.  While I am not unsympathetic to the
Plaintiff's position and the Claimant's physical condition prior to death, I am unable to
conclude that the ALJ's RFC determination and the medical records and opinions on which it
is based are unsupported.[8]

By her second claim, Plaintiff argues that the ALJ erred by relying on the grids in
determining that Claimant was not disabled and not calling a vocational expert (hereinafter

---

[8]To this end, it is worth noting that, even if I disagreed with the ALJ's conclusions
based on his evaluation of the evidence, I am foreclosed from reweighing the evidence or
substituting my own judgment for that of the ALJ.  See Martin v. Sullivan, 894 F.2d 1520,
1529 (11th Cir. 1990); Bloodsworth, 703 F.2d at 1239.

"VE") to testify on the matter.  In support of her argument, Plaintiff relies primarily on the

Eleventh Circuit's opinions in <u>Foote v. Chater</u>, 67 F.3d 1553 (11th Cir. 1995) and <u>Marbury v.</u>

<u>Sullivan</u>, 957 F.2d 837 (11th Cir. 1992), as well as other decisions frequently cited by this

court in similar circumstances.  (Doc. 20 at 8-10).  As such, Plaintiff presents the recurring

issue of whether the ALJ may rely exclusively on the grids for decision, or whether a

vocational expert is required.  The decision in <u>Foote</u> is instructive on the law:

> Once the finding is made that a claimant cannot return to
> prior work the burden of proof shifts to the Secretary to show
> other work the claimant can do. . . . The Secretary bears the
> burden of establishing that Appellant, who could not perform
> [his] past work, could perform alternative work in the
> national economy. Although this burden can sometimes be
> met through straightforward application of the
> Medical-Vocational Guidelines (the "grids"), the regulations
> regarding the implementation of the grids caution that they
> are only applicable under certain conditions.  For example,
> the claimant must suffer primarily from an exertional
> impairment, without significant non-exertional factors. . . .
> Exclusive reliance on the grids is appropriate in cases
> involving only exertional impairments (impairments which
> place limits on an individual's ability to meet job strength
> requirements). . . . Pain is a nonexertional impairment. . . .
> Exclusive reliance on the grids is inappropriate when a
> claimant has a nonexertional impairment that significantly
> limits the claimant's basic work activities. . . . If the grids are
> inapplicable, the Secretary must seek expert vocational
> testimony.

<u>Foote</u>, 67 F.3d at 1559 (citations omitted).

In <u>Marbury</u>, the court further addressed the interplay between the grids and

nonexertional impairments.  There, the ALJ found certain nonexertional impairments

including seizure disorder, peptic ulcer disease and an affective disorder; however, he

determined the Plaintiff could do a full range of light work and no vocational expert was

necessary.  In rejecting this conclusion and the ALJ's reliance on the grids, the court stated, "it is only when the claimant can clearly do *unlimited* types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."  Marbury, 957 F.2d at 839 (citing Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989), and quoting Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981) (emphasis in original)).  The court concluded that upon the ALJ's findings that Plaintiff suffered nonexertional impairments, "it is evident that claimant was not able to do *unlimited* types of light work, because he was precluded from work around unprotected heights and dangerous moving machinery."  Marbury, 957 F.2d at 839 (emphasis in original).  Accordingly, expert testimony was required to determine whether the claimant's limitations were severe enough to preclude him from performing a wide range of light work.  Id., see also Phillips v. Barnhart, 357 F.3d 1232 (11th Cir.2004).

However, the Eleventh Circuit has recognized that nonexertional limitations can cause the grids to be inapplicable only when they are severe enough to prevent a wide range of gainful employment at a given exertional level.  See Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  This case further instructs that the ALJ should make a specific finding as to whether or not any nonexertional limitations preclude a wide range of employment at the given exertional level.  As indicated in Sryock, where such determination is made, it is reviewed only to determine whether it is supported by substantial evidence.

Here, the ALJ did just that.  Although the ALJ found that the Claimant had nonexertional postural limitations, he concluded that those limitations did not prevent the Claimant from performing a wide range of light [and therefore sedentary] exertional work.

10

(R. 16).  That conclusion is supported by substantial evidence.  First, it is worth noting that the

Claimant did not allege the inability to occasionally perform any of the postural limitations

found by the ALJ.  Further, the Plaintiff fails to demonstrate from the medical record other

nonexertional limitations not properly considered by the ALJ, and while postural limitations

might arguably affect a claimant's ability to perform some light exertional work, pursuant to

Social Security Ruling 96-9p, postural limitations do not usually significantly erode the

occupational base for a full range of unskilled, sedentary work because such activities are not

usually required in such work.[9]  See SSR 96-9p, 1996 WL 374185 (S.S.A.).  The same is true

with respect to a need to avoid all exposure to hazardous conditions, such as working in high

places.  See SSR 96-9p, 1996 WL 374184, * 9 (S.S.A.).  For these reasons, the ALJ's finding

that the Claimant was not precluded from performing a wide range of light *and* sedentary

exertional work is supported by substantial evidence.  Consequently, while I agree with the

Plaintiff that the use of a vocational expert may well have been the preferable method for

reaching a decision in this case, the ALJ's exclusive reliance on the grids for decision does not

result in reversible error.

By her final claim, Plaintiff argues that the ALJ's consideration of Claimant's

subjective complaints ran afoul of controlling Eleventh Circuit authority and the regulatory

---

[9]To the extent Plaintiff suggests that the ALJ erred in relying on grid Rule 202.18 in that it corresponds to light exertional work, any such error is harmless because the same result of not disabled is reached in regards to sedentary exertional work under grid Rule 201.19.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61.

provisions addressing such.  According to Plaintiff, the ALJ did not adequately consider the subjective complaints Claimant reported on his disability paperwork and to attending doctors. In particular, Plaintiff points to Claimant's complaints of shortness of breath, weakness and fatigue.  Plaintiff also argues that the ALJ improperly rejected Claimant's allegations on the basis that Claimant was non-compliant in taking his medications because the ALJ did not investigate the reasons for the alleged non-compliance.  (Doc. 20 at 10-14).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote, 67 F.3d at 1561-62.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  Hale, 831 F.2d at 1012.

As for Plaintiff's claim that the ALJ failed to apply the proper standard, the decision reflects otherwise.  Here, although the ALJ did not expressly refer to the "pain standard," his

citation to 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, <u>see</u> (R. 15), reveals his

understanding of the applicable standard, and a fair reading of the decision reflects his

application of the standard.  <u>See</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Thus, the ALJ found that the Claimant had medically determinable impairments, namely,

chronic heart failure, chronic renal failure, hypertension, hepatitis B and C, and HIV, that

could reasonably give rise to symptoms (shortness of breath, fatigue, and limited walking)

alleged, just not to the extent that he was precluded from performing all work prior to

December 31, 2001.

Further, the ALJ adequately discounted the Claimant's subjective allegations of

disabling symptoms on the basis that the overall medical record did not support such.  To this

end, the ALJ noted:

> The Claimant was treated with diuretics for edema from
> congestive heart failure in January 2001 with good results, as
> shown by hospital records; however, he subsequently
> was non-compliant with prescribed treatment and ultimately
> required hospitalization for exacerbation of chronic heart
> failure and associated edema a year later, at which time he
> once again responded well to diuresis.  The diagnosis of
> renal failure, also made in January 2001, was not supported
> by Doppler or sonogram findings of the kidneys and was
> ultimately ascribed to hypotension and long-standing cocaine
> abuse.  Renal failure recurred a year later after continued
> non-compliance with diuretic treatment.  The Claimant did
> have a history of hypertension but there is no indication that
> he suffered blackouts, episodes of blurred vision or evidence
> of end-organ failure arising from that condition.  He was also
> positive for hepatitis B and C but the record does not
> document the complaints of persistent fatigue, malaise,
> jaundice or tenderness normally associated with such
> disorder.  As it pertained to HIV the Claimant's CD4 count
> was no lower than 429, recorded prior to the alleged
> disability onset date in January 2001, and in fact it was as

> high as 754 both times it was recorded at the Health Clinic.
> Moreover, claimant was, once again, non-compliant with
> medical treatment, as shown in clinic records.  The
> undersigned further notes that the Claimant was never given
> any functional limitations after his hospitalizations in
> January and April 2001 or even in February 2002.  Certainly
> no physician ever made a finding of disability during the
> alleged period of disability.

(R. 15-16).  In addition, the Claimant was seen on at least three occasions in May, August, and

October 2001 at the Hillsborough County Health Clinic and physical exams were reportedly

normal.  (R. 131, 133, 135).  In May 2001, the Claimant complained only of dizziness when

walking long distances and denied shortness of breath and palpitations.  (R. 135).  In August

2001, it was noted that the Claimant had no complaints and was doing well.  Thereafter, in

October 2001, no complaints were noted although the Claimant reported that he was not

taking his cardiac medications regularly.  (R. 131).  Also in October 2001, Dr. John C.

Dormois, a cardiologist, examined the Claimant and the only complaint noted was that the

Claimant gets tired on exertion.  (R. 142-23).  The doctor assessed aortic valve disease, recent

endocarditis, and aortic insufficiency but noted no limitations or restrictions and indicated that

the Claimant was to return in two months or as needed.  Id.

As for Plaintiff's complaint that the ALJ should not have discounted the Claimant's

allegations of disabling symptoms on the basis of failing to follow prescribed treatment, i.e.,

non-compliance with medication, the medical record as reviewed by the ALJ and as set forth

14

above provide adequate reasons for discounting the allegations separate and aside from non-compliance with medication.[10]


IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 5th day of February 2007.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of record

---

[10]In any event, I fail to see how the ALJ could have made a reasonable inquiry into the Claimant's non-compliance given the circumstances of this case.  The Claimant himself admitted on more than one occasion that he had not taken his medication regularly and he never alleged that it was due to an inability to pay or an inability to understand the consequences, as suggested here by Plaintiff.